[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13788

_____

D.C. Docket No. 1:17-cv-00125-JRH-BKE

RAMONICA M. LUKE,

Plaintiff-Appellant,

versus

UNIVERSITY HEALTH SERVICES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(January 28, 2021)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

MARTIN, Circuit Judge:

Ramonica Luke, a former employee of University Health Services, Inc.

("University Health") sued University Health under Title VII for alleged racial

discrimination after she was terminated.  The District Court granted summary

judgment in favor of University Health.  After careful consideration, and with the benefit of oral argument, we affirm.

## I.  BACKGROUND[1]

In May 2006, Ms. Luke, who is African-American, began working as a patient care assistant for University Hospital.  University Hospital is operated by University Health, which is the party to this appeal.  Later in 2006, Ms. Luke began working in the lab at University Hospital as a phlebotomist/processor during the night shift.  Her hours were from 6:00 PM to 6:30 AM.  In that position, she was responsible for drawing blood, inputting patient demographics, answering phone calls, and filing paperwork.  Ms. Luke was supervised by Vickie Forde.

As time passed, Ms. Luke accumulated a lengthy disciplinary record for tardiness and attendance problems during her work for University Hospital.  She received verbal counseling in March 2008 due to her violating University Hospital's attendance policy.  She then received written warnings in August 2008, June 2011, and January 2014, again for violating the attendance policy.  In August 2014, Ms. Luke got a final written warning for violating the attendance policy, which said "the next occurrence of not meeting hospital policy could result in termination."  Ms. Luke received a second and a third final written warning in

---

[1] Like the District Court, we rely on University Health's statement of undisputed material facts from summary judgment, which Ms. Luke did not contest.

March 2015 and September 2016.  Between the January 2014 written warning and the September 2016 final written warning, Ms. Luke was tardy over 100 times.  The September 2016 final written warning said, "This has been a habitual and serious problem and improvement has not been seen, therefore the next occurrence of a tardy will result in immediate termination."  All written warnings were issued by Ms. Luke's supervisor, Ms. Forde.

Then at 6:11 PM on December 31, 2016, Ms. Forde got an email from Amita Simmons, who was working the shift prior to Ms. Luke's.  Ms. Simmons wrote, "I have been here since 4 a.m. AND I am still here, Ramonica is continuously late and [it's] not fair to me."  The next day, Ms. Forde received another email from Ms. Simmons, which said, "I had to stay 15 minutes behind the schedule on the clock because Ramonica was late."  Prompted by Ms. Simmons's complaint, Ms. Forde set out to investigate.  Ms. Forde reviewed the time adjustment sheet, which documents an employee's hours of work on those occasions when the employee forgets to clock in.  The time adjustment sheet had an entry by Ms. Luke on December 1, 2016 saying that she "forgot to clock in [at] 6pm."  Although Ms. Luke did not write that the time adjustment sheet was for December 31, 2016, there were a couple of circumstances that made Ms. Forde believe that Luke meant to make a time adjustment for December 31 instead of for December 1.  First, the time adjustment sheet is kept in chronological order, and Ms. Luke's entry

3

followed one made by Ms. Simmons on December 31, 2016 when Simmons also forgot to clock in. Second, Ms. Luke worked on December 1, 2016 and clocked in at 5:59 PM, so she would have had no need to use the time adjustment sheet for that day. Ms. Forde also reviewed security footage and pulled Ms. Luke's badge history from December 31. This investigation revealed that Ms. Luke arrived in the lab at 6:12 PM, 12 minutes after her scheduled start time and 12 minutes after the 6:00 PM time Ms. Forde thought Luke meant to list on the time adjustment sheet for December 31.

After her investigation, Ms. Forde recommended that Ms. Luke be terminated based on her history of attendance problems and what Forde perceived as falsification of the time adjustment sheet. Ms. Forde's recommendation went to Vita Mason, an employee relations specialist in the human resources department, for review. Ms. Mason felt she could neither definitively prove nor disprove whether Ms. Luke falsified the time adjustment sheet, but she approved the recommendation for termination based solely on Luke's history of attendance problems. Ms. Mason then sent the termination recommendation to Chris Westbrook, vice president of human resources at University Hospital, who provided final approval for Ms. Luke's termination. Ms. Luke was terminated on January 11, 2017 based on her history of attendance problems, including 32 documented instances of being tardy in the preceding year.

4

Ms. Luke filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging she was discriminated against based on her race. She said she was "aware of similarly-situated Caucasian co-workers who were not discharged for committing similar violations." The EEOC ultimately issued Ms. Luke a notice of right to sue. In October 2017, Ms. Luke, proceeding pro se, sued University Health in the Southern District of Georgia, asserting claims under Title VII for racial discrimination. Both Ms. Luke and University Health moved for summary judgment, and the District Court granted summary judgment in favor of University Health. This is Ms. Luke's pro se appeal.

## II.  DISCUSSION

We review de novo a district court's order granting summary judgment, "viewing all evidence and drawing all reasonable inferences in favor of the nonmoving party." Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1249 (11th Cir. 2014) (quotation marks omitted). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We construe pro se filings liberally. Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015).

We begin by setting out the legal framework that guides us. Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  When, as neither party disputes here, a Title VII claim is based on circumstantial evidence, the three-step burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), applies to determine whether there has been discrimination.  Smelter v. S. Home Care Servs. Inc., 904 F.3d 1276, 1288 (11th Cir. 2018).  At the first step of McDonnell Douglas, the employee must make out a prima facie case of discrimination, which gives rise to a rebuttable presumption that the termination was discriminatory.  Id. Once the prima facie case is made, the burden shifts to the employer at the second step, which must provide a "legitimate, nondiscriminatory reason for its actions." Id.  Finally, at the third step, if the employer provides such a reason, "the presumption raised by the prima facie case is rebutted" and the burden shifts back to the employee to show that the employer's proffered reason is a "pretext for illegal discrimination."  Id. (quotation marks omitted).  To show pretext at this third step, the evidence must show "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."  Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1313 (11th Cir. 2016) (quotation marks omitted).  The employee survives summary

6

judgment only "if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." Id. (quotations marks omitted).

Applying this legal framework at summary judgment, the District Court first assumed Ms. Luke had established her prima facie case. The District Court then found that University Health provided a legitimate, non-discriminatory reason for Ms. Luke's termination, as the "record contains evidence documenting [Luke's] attendance issues, multiple warnings, a coworker complaint, and a termination letter identifying attendance as the reason." At the third step, the District Court found that Ms. Luke failed to meet her burden of showing University Health's proffered reason was pretextual. In this Court, Ms. Luke makes five challenges to the District Court's summary judgment ruling. We address these issues in turn.[2]

## A.    Ms. Luke's proffered comparators do not show discrimination.

In order to show discrimination, an employee must show that her employer treated her less favorably than similarly situated employees. Lewis v. City of Union City, 918 F.3d 1213, 1221 (11th Cir. 2019) (en banc). This is because "discrimination is a comparative concept—it requires an assessment of whether

---

[2] Ms. Luke also raises three other issues unrelated to the District Court's summary judgment ruling. However, Ms. Luke did not first raise these issues in the District Court, so we cannot consider them on appeal. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) ("[I]ssue[s] not raised in the district court and raised for the first time in an appeal will not be considered by this court." (quotation marks omitted)).

'like' (or instead different) people or things are being treated 'differently.'" Id. at 1223. In Lewis, this circuit recently held that the comparators must be "similarly situated in all material respects." Id. at 1226 (quotation marks omitted). This means a comparator ordinarily will have "engaged in the same basic conduct (or misconduct) as the plaintiff," "been subject to the same employment policy," "been under the jurisdiction of the same supervisor," and "will share the plaintiff's employment or disciplinary history." Id. at 1227–28. Although the comparator analysis is conducted at the first step of McDonnell Douglas when the employee is establishing her prima facie case, it can also "of course be used" to demonstrate pretext at the third step. Id. at 1223–24 & n.9.

Ms. Luke argues the District Court erred by failing to consider her eight comparators: Frances Darnell, Pamela Evans, Jennifer Campbell, Janet Neal, Alice Mueller, Blake Wojtaszok, Joy Sizemore, and Laura Glossom. According to Ms. Luke, these people are white, have a history of attendance problems, and worked under Ms. Forde as a phlebotomist/processor or as a courier at University Hospital. None of them were terminated for attendance problems. Ms. Luke is correct that the District Court failed to consider her comparators at the prima facie stage of McDonnell Douglas. But that's only because the District Court assumed Ms. Luke established her prima facie case, so it had no need to evaluate her comparator evidence at McDonnell Douglas's first step. To the extent Ms. Luke argues the

8

District Court failed to consider her comparators at the pretext stage of McDonnell Douglas, the record shows otherwise.  The District Court found that Ms. Forde did not suspect the comparators of falsifying their time adjustment sheets and that no coworker of the comparators complained to Ms. Forde about their tardiness.  Therefore, it found that, in Ms. Forde's view, Ms. Luke "was in a situation dissimilar to [her] proffered comparators."

Indeed, the record shows Ms. Luke's comparators were not similarly situated to Luke in "all material respects" insofar as the comparators did not share Luke's "employment or disciplinary history."  See Lewis, 918 F.3d at 1226, 1228 (quotation marks omitted).  Specifically, Ms. Forde never suspected the comparators of falsifying time and attendance records.  We recognize that Ms. Luke was not ultimately terminated because of her suspected falsification of the time adjustment sheet, but Ms. Forde's perception that Luke falsified the time adjustment sheet led Forde to recommend termination.  And Ms. Mason then approved Ms. Forde's recommendation because of Ms. Luke's history of attendance problems.  Thus, the suspected falsification is a material difference between Ms. Luke and her comparators in that it got the ball rolling towards her termination.[3]  Beyond that, no coworker of the comparators complained to Ms.

_____

[3] And even if the suspected falsification of the time adjustment sheet did contribute to Ms. Luke's termination, our precedent allows an employer to "fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its

9

Forde about their tardiness. This, too, is a material difference between Ms. Luke and her comparators. Ms. Simmons's complaint about Ms. Luke's tardiness is what led Ms. Forde to investigate her tardiness, which ultimately led to the recommendation for termination. Because Ms. Luke's comparators are not similarly situated in all material respects, they cannot establish discrimination.

**B.    The District Court did not improperly consider Angela Thomason in finding that Ms. Luke failed to show pretext.**

When discussing the issue of pretext, the District Court noted in passing that Mr. Westbrook, the vice president of human resources at University Hospital who made the final decision to terminate Ms. Luke, "treated a Caucasian employee [Angela Thomason] in the same manner" as Ms. Luke. Ms. Luke argues the District Court erred in considering Ms. Thomason as a comparator because, according to Luke, Thomason does not have the same employment history as Luke. Ms. Luke did not first raise this argument in the District Court, so we cannot consider it on appeal. See Access Now, 385 F.3d at 1331. But even if we could, Ms. Luke's argument is unavailing. As an initial matter, we are not convinced that the District Court treated Ms. Thomason as a comparator. For instance, the District Court never addressed whether Ms. Thomason was similarly situated to

---

action is not for a discriminatory reason." Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1324 n.16 (11th Cir. 1998) (per curiam) (quotation marks omitted).

Ms. Luke.  See Lewis, 918 F.3d at 1226.  Instead, it appears the District Court simply referred to Ms. Thomason in support of its finding that Ms. Luke failed to show the human resources personnel's decision to approve Luke's termination was pretextual.

Nevertheless, even if the District Court did consider Ms. Thomason as a comparator at the pretext stage, Ms. Luke has not shown that the District Court erred in doing so.  Although Ms. Luke says Ms. Thomason does not have the same employment history as herself (and is thus not similarly situated), the burden is on Luke at the pretext stage, and she has not explained how Thomason's employment history is different from her own.  See Smelter, 904 F.3d at 1288 (stating that, at the pretext stage, "the burden shifts back to the employee").

### C.    The purportedly inconsistent reasons provided by University Health for terminating Ms. Luke do not show pretext.

Ms. Luke says the reasons given by University Health for her termination are inconsistent.  She says University Health said she was terminated for being tardy on December 31, 2016, but she reads a January 25, 2017 letter from Ms. Mason as saying she was terminated "due to a mispunch (not clocking in)."  Ms. Luke offers this inconsistency to show that University Health's proffered reason for terminating Luke is a pretext for discrimination.

Inconsistencies in or shifting explanations for an employer's proffered reason for termination can indeed be evidence of pretext.  See Tidwell v. Carter

11

Prods., 135 F.3d 1422, 1428 (11th Cir. 1998); Bechtel Constr. Co. v. Sec'y of Labor, 50 F.3d 926, 935 (11th Cir. 1995).  However, a close view of the evidence in favor of Ms. Luke uncovers no inconsistency in the reason given for why she was terminated.  The undisputed record shows Ms. Luke was terminated for her history of attendance problems, and Ms. Mason's letter expressly says, "Ms. Luke was terminated for attendance."  While Ms. Luke says University Health also told her she was terminated for tardiness, that is completely consistent with terminating her for attendance problems.  True, Ms. Mason's letter notes a "missed punch," but that's mentioned in the context of Ms. Luke's failure to clock in as "resulting in the recommendation for termination."  We do not read it to be offered as the actual reason Ms. Luke was terminated.  At most, the purported inconsistency simply indicates that the reason for recommending termination and the reason for termination were different.  But when there is no inconsistency in the reason for termination itself, we cannot say that reason was pretextual.

**D.    Ms. Luke cannot rely on the work rule defense to show pretext.**

Ms. Luke's next argument relies on what is called the "work rule defense." On summary judgment, when an employer's proffered reason for terminating an employee is the violation of a work rule, that reason is "arguably pretextual when a plaintiff submits evidence (1) that she did not violate the cited work rule, or (2) that if she did violate the rule, other employees outside the protected class, who

12

engaged in similar acts, were not similarly treated." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1363 (11th Cir. 1999). Ms. Luke says she did not falsify the time adjustment sheet, so under the first Damon method, University Health's proffered reason for her termination is arguably pretextual. However, again here, Ms. Luke did not first raise this argument in the District Court, so we cannot consider it on appeal. See Access Now, 385 F.3d at 1331. But even if we could, Ms. Luke's argument cannot carry the day. Specifically, Ms. Luke was not terminated for falsifying the time adjustment sheet. As set out above, Ms. Mason could not definitively prove or disprove that Ms. Luke falsified the time adjustment sheet. Instead, Ms. Mason approved the recommendation for termination based on Ms. Luke's history of attendance problems. In other words, even if Ms. Luke put forth evidence that she didn't falsify the time adjustment sheet (and she hasn't), she has not shown that she "did not violate the cited work rule" for which she was actually fired—her history of attendance problems. Damon, 196 F.3d at 1363. Therefore, Ms. Luke cannot use the work rule defense to show pretext.

## E.    University Health's purported failure to follow its policies does not show pretext.

Finally, Ms. Luke says University Health failed to follow its policies, which shows pretext. An employer's deviation from its policies can be evidence of pretext. See Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla., 256 F.3d 1095,

13

1108 (11th Cir. 2001), overruled on other grounds by Crawford v. Carroll, 529 F.3d 961 (11th Cir. 2008). However, viewing the record in favor of Ms. Luke, we must reject her assertion. Ms. Luke says University Health didn't follow its process for investigating and correcting employee misconduct, but that process is characterized as "optimal," not mandatory. Even so, the undisputed evidence shows that Ms. Forde and Ms. Mason investigated the suspected falsification thoroughly before proceeding with her termination. And while Ms. Luke says University Health didn't follow its policy limiting the consideration of tardiness history to the preceding 12 months, that policy also is not mandatory. And in any event, the undisputed evidence is that Ms. Luke was terminated for her history of attendance problems, including 32 documented instances of being tardy in the 12 months preceding her termination.

## III.  CONCLUSION

Ms. Luke has not shown "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Furcron, 843 F.3d at 1313. The District Court therefore properly granted summary judgment in favor of University Health.

**AFFIRMED.**

14